REES & COMPANY *v.* ROAD IMPROVEMENT DISTRICT No. 1.

## Opinion delivered January 19, 1925.

1. HIGHWAYS—LIABILITY OF ROAD DISTRICT.—A stipulation in a settlement between a road district and the contractors that, if a subcontractor recovered against the contractors, then the contractors have not "released their right to sue the road district" for such amount as they might be required to pay such subcontractor was not equivalent to an agreement by the district to pay the amount which the subcontractor might recover against the contractor.

2. JURY—DISQUALIFYING INTEREST.—Owners of land and tax payers within a road district are not disqualified from serving as jurors in an action by a contractor against the district.

3. JURY—DISQUALIFICATION.—One associated in business with the attorney for a road district and with one of the commissioners of the district is not thereby disqualified to serve as a juror in an action against the district.

4. EVIDENCE—OPINION EVIDENCE.—In an action by a contractor against a road district, where the subcontractor had filed a statement showing that he had cleared a certain acreage, which was disputed by the testimony of the defendant, it was not error to exclude testimony that according to such statement plaintiff's subcontractor had cleared the stated acreage, the computation of the acreage not requiring expert knowledge.

5. TRIAL—INSTRUCTION DISREGARDING PROVISION OF CONTRACT.—An instruction, in an action by a contractor against a road district, which made defendants' engineer's statement conclusive, regardless of how the statement was made, *held* erroneous, as disregarding the provision of the contract that measurements should be according to United States standards.

6. HIGHWAYS—AUTHORITY OF ENGINEERS TO CHANGE CONSTRUCTION OF CONTRACT.—Where a road district's engineers had adopted one construction of a clearing and grubbing contract as to the method of computing this acreage, they could not, after plaintiff

had dealt with his subcontractor on such basis, adopt a changed construction to plaintiff's prejudice.

Appeal from Clark Circuit Court; *J. H. McCollum,* Judge; reversed.

*Arnold & Arnold,* for appellants.

The court erred in allowing certain tax payers and land owners in the district to serve as jurors. 119 Ind. 368; 21 N. E. 977; 5 L. R. A. 253; 81 Kan. 616; 166 Pac. 1034; 28 L. R. A. (N. S.) 156; 115 La. 575; 40 So. 37; 57 Ore. 236; 119 Pac. 130; 5 L. R. A. 253; 90 Ind. 119; 20 Kan. 156; 34 Cyc. 271; 17 Am. & Eng. Enc. Law 1133; 147 So. 585; 1 L. R. A. 620; 9 Am. St. Rep. 750; 18 N. E. 587. · A person who has any interest in a case is disqualified to serve as a juror. 23 Ark. 50; 93 Ark. 301. 23 Ark. 0; 93 Ark. 301. The engineers of defendant having interpreted the contract and Rees & Co. having acted under that interpretation in carrying out the contract, the defendant is now estopped from denying liability. 230 S. W. 656; 133 Ark. 302; 95 Ark. 449; 114 Ark. 415; 293 Fed. 155; 9 Wall. 50; 19 L. ed. 594; 107 U. S. 402; 185 U. S. 236; 22 Sup. Ct. 633; 46 L. ed. 890; 114 Fed. 474; 52 C. C. A. 276; 193 N. Y. 543; 86 N E. 565.

*McMillan & McMillan,* for appelle.

There was no error on the part of the court in allowing certain named tax payers and landowners to qualify and serve as jurors. 30 Ark. 328; 155 Ark. 130; 150 Ark. 155; 154 Ark. 119; 153 Ark. 300; 151 Ark. 601; 32 Ark. 766; 121 Ark. 210; 57 Ore. 236; Ann. Cas. 1913 A. p. 119. The interest of a citizen and tax payer of a municipal corporation is not sufficient to disqualify him in a civil action to which the city is a party. 104 Am. St. Rep. 600; 121 Ann. 1913A.; 14 Bush 87. The rights of the parties were fixed by the contract and not by the decision of the engineer. 100 Ark. 166; 146 Ark. 166.

Humphreys, J. This suit was brought by appellants against appellee in the circuit court of Clark County to recover an alleged balance of $6,300 due them under contract for clearing and grubbing about 121 acres of the

right-of-way of three roads in said county, between July 1 and December 1, 1919.

Many pleadings were filed by the respective parties, introducing a number of issues, but the real issue joined and upon which the case turned in the trial court was the amount of clearing and grubbing done, according to the measurement of the area under the proper interpretation of the contract relative thereto and as applied to the facts in the case, and whether, under a proper interpretation and application thereof, appellant had been fully paid for the work done.

The cause was submitted upon the pleadings, testimony and instructions of the court, which resulted in a verdict and judgment dismissing appellant's complaint from which is this appeal.

There was no dispute about the price per acre which appellant was to receive for the work, the only dispute being the manner in which the amount of the acreage should be determined. Appellant was to receive $150 an acre for the work under the contract, and sublet it to J. W. Overton for $100 per acre. The engineers of the appellee estimated that only 54 acres had been cleared and grubbed, and appellees refused to pay for any acreage in excess of that estimate. A suit was brought by Overton against appellants, in which he recovered $4,200 additional upon the theory that his contract with appellants allowed a recovery for the entire acreage contained in a station if he did any clearing or grubbing in said station. The highways of the various roads embraced in the contract had been divided into stations and numbered for purposes of convenience in identifying any particular part of the road. Overton claimed a greater estimate in acreage than the jury allowed, in arriving at their verdict. Appellants defended that suit upon the theory that the contract they made with Overton was the same, in substance, as the contract they made with appellee, and that Overton should only recover for such acreage as they were entitled to receive pay for

from appellee. During the pendency of this suit a settlement was reached between appellants and appellee as to the amount due them for the construction of the road, excepting from the contract appellants' claim for additional acreage due them on account of the Overton claim and suit. The settlement contract was reduced to writing, and contained the following exception relating to the Overton suit: "If said contractor (Overton) finally collects judgment from C. A. Rees & Company, then the said C. A. Rees & Company have not, by this agreement and settlement with the said road district, released their right to sue the road district to recover such amount as they shall have been compelled to pay said Overton."

The settlement aforesaid was introduced in the case, appellant contending that, under it, appellee agreed to pay appellants any amount that Overton might recover against them, and appellee contending that it preserved the right of appellants to test out their claim of extra acreage in the courts if Overton recovered a judgment against them. We think the latter construction of the settlement contract correct, and that the issue should not have been submitted to the jury as was done by the court. The submission of the issue, however, was not prejudicial to appellant, but was favorable to him.

The reversal of the judgment is also sought upon the ground that a number of the jurors owned property and were taxpayers in appellee Improvement District No. 1 of Clark County, Arkansas, and that Graham Brown, one of the jurors, was also in business with one of the attorneys for appellee, and with Mr. Clark, one of the commissioners of said district. The jurors were examined very carefully upon their *voir dire,* and stated that they would not be influenced in returning their verdict on account of being owners of land and taxpayers in said district. The amount of any judgment which might have been rendered when apportioned amongst the taxpayers would have been almost infinitesimal.

Their interest was so slight that it is easy to see how they might answer, under oath, that they would not permit their interest to influence them in arriving at a verdict.   This court ruled in the case of *Osborne* v. *Board of Improvement of Paving District No. 5 of Fort Smith*, 94 Ark. 563, that the "interest that will disqualify a judge must be direct and immediate, and not contingent and remote," citing in support of the ruling Mr. Works in his "Treatise on Courts," p. 396, and, in making the ruling, said: "It does not appear that the chancellor had any interest in the real estate of the litigation other then the general interest which any other citizen and property owner in the district had,   *   *   *   which is, at most, only a remote interest and not a direct one."

Neither do we think that, because Graham Brown was associated with one of appellee's attorneys and one of the commissioners in business, he was necessarily disqualified as a juror.   He stated that his association with these gentlemen in business would not influence his verdict.

The court did not abuse his discretion in permitting the jurors to serve and in refusing to sustain the challenges to them.

Appellant also seeks a reversal of the judgment because the court refused to permit H. H. Catchings to testify, in rebuttal, that according to the evidence of Overton and the statement filed with his testimony, he had cleared and grubbed 107 acres.   Overton, one of the witnesses in the case, attached a statement to his evidence showing, according to his figures, that he had cleared and grubbed 122 acres, but the accuracy of this statement had been questioned and the acreage very much reduced by two witnesses introduced by appellee. The testimony of H. H. Catchings was offered to counteract the effort of the testimony of the two witnesses last referred to.   If the evidence of Overton and the statement he attached involved calculations which any one could make, both the evidence and statement were before

the jury, and the court properly excluded the testimony of H. H. Catchings in verification thereof. It was not shown that, in order to reach a correct result in the calculation of the number of acres which Overton had cleared and grubbed, expert knowledge was required.

Lastly, a reversal of the judgment is sought upon the ground that the court, in effect, peremptorily instructed a verdict, and, in doing so, excluded the theory of appellants that, in the beginning, the engineers of appellee interpreted the contract as allowing pay for the entire area in a section if any clearing was done therein upon which they acted to their damage. There was some testimony introduced in the case tending to show that the engineers for appellee so construed the contract, and that appellants governed themselves in subletting the contract by such interpretation, and were compelled to pay Overton upon that basis.

Section 53 of the contract provided that the engineers should have "full supervision, * * * and his decisions * * * as to the meaning of all drawings and specifications should be final and conclusive. He shall determine the amount and quantity of the work of the several kinds performed." Relying upon this provision of the contract, the court abandoned his construction of § 83 (c), 53, 62, 65 and 68, when read together, as meaning that, if any clearing or grubbing was done in a station, the contractor should receive pay for the entire acreage within the limits of the station, and instructed the jury that the estimate of the engineers as to the amount of the clearing and grubbing was final and binding upon appellants, unless the engineers made a gross mistake in measuring the clearing and grubbing. This instruction gave a binding effect to the final estimate of the engineers, irrespective of how they arrived at their measurements and irrespective of whether they adopted a different method at the outset and during the progress of the work from that adopted on final settlement. The contract contained the clause "that the quantity shall be

measured according to the United States standard measurements.'' This clause was binding upon the engineers, and, unless they followed the correct rule, their estimates would not be binding upon the parties.

Appellants had witnesses present to show what the United States standard measurements were, but, until near the close of the trial, the court held to the view that the contract, as a whole, meant that, when clearing or grubbing was done in any station, the contractor was entitled to pay for the entire acreage in said station. After the court placed this construction upon the contract, appellants excused their witnesses, and, when the court abandoned this view and permitted appellee to prove by witnesses what the United States standard measurements meant, appellants were not prepared to meet the proof. This greatly prejudiced their cause, as they claim the rule was not correctly defined by appellee's witnesses. The instruction given therefore ignored this provision of the contract, and was prejudicial. It was also prejudicial because it permitted the engineers to adopt one method of arriving at the measurements in the beginning and during the progress of the work and later change it, even if the contractor had acted upon the first method adopted and sublet the contract upon that basis. There was testimony introduced tending to show that, both at the outset and during the progress of the work, the method adopted by the engineers in arriving at the acreage in this and many other districts was to calculate the entire area in a station where any clearing and grubbing was done. One witness testified that this method was adopted to equalize the light and heavy work, and thereby accomplish an equitable result.

The appellants requested instruction No. 5, which was refused, over their objection and exception. It correctly declared the law applicable to the facts upon that phase of the case, if true. The instruction is as follows:

"You are instructed that, if you find that the engineers interpreted the contract with reference to measurement of clearing and grubbing, at the outset, to be that a full station is allowed where any clearing and grubbing is done between stations, and the defendants adopted same, and the plaintiffs acted on the said interpretation to their injury, the defendant is estopped, and you will find for the plaintiff." The court committed reversible error in refusing to give this instruction.

On account of the errors indicated the judgment is reversed, and the cause is remanded for a new trial.